**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYREE BOHANNON, | : | Civil No. 3:23-cv-1312 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| LIEUTENANT TREVETHAN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Tyree Bohannon ("Bohannon"), an inmate housed at the State Correctional

Institution, Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil rights action pursuant

to 42 U.S.C. § 1983.  (Doc. 1).  The matter is proceeding via an amended complaint.  (Doc.

36-1).  Named as Defendants are Lieutenant Trevethan, Superintendent's

Assistant/Grievance Coordinator Kyle Fagan, Superintendent's Assistant/Grievance

Coordinator Nicole Hogan, Assistant Chief Grievance Coordinator Keri Moore, Correctional

Officer Berlew, Superintendent Ransom, and Acting Secretary of Corrections George Little.

Before the Court is Defendants' motion (Doc. 44) to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6).  For the reasons set forth below, the motion will be granted in part

and denied in part.

I.    **Allegations of the Amended Complaint**[1]

In his amended complaint, Bohannon sets forth various complaints regarding his confinement at SCI-Dallas and his perceived mistreatment by numerous Defendants beginning in June of 2021.  (Doc. 36-1).  Bohannon alleges that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights in retaliation for a grievance he filed in June of 2021.  (Id.).

Grievances in June 2021 and July 2021

Bohannon first alleges that he submitted a grievance to Defendant Fagan on June 27, 2021. (Doc. 36-1 ¶ 12).  In the grievance, Bohannon alleged that two non-party correctional officers violated rules of conduct by changing the television station, playing loud music, and retaliating against inmates.  (Doc. 36-1, p. 32).  Bohannon alleges that this grievance was not properly processed and answered in the timeframe required by the Department of Corrections' ("DOC") polices.  (Doc. 36 ¶ 13).  Therefore, in July of 2021, Bohannon "spoke directly with the Defendant, Mr. Fagan" regarding the alleged unanswered grievance.  (Id. ¶ 14).  Defendant Fagan informed Bohannon that he had multiple grievances pending, and they would be answered "at the same time."  (Id.).

---

[1]    Bohannon's brief in opposition to Defendants' motion contains factual allegations that are not expressly set forth in the amended complaint.  (See Doc. 55).  The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief.  See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

In August of 2021, Bohannan alleges that he still did not receive a response. (*Id.* ¶ 15). Therefore, on August 18, 2021, Bohannon contacted Defendant Trevethan regarding the unanswered grievance. (*Id.*). Defendant Trevethan allegedly instructed Bohannon to have a correctional officer make a copy of the unanswered grievance. (*Id.*). He assured Bohannon that "it would be taken care of." (*Id.*). On or about that same day, Bohannon alleges that, per Defendant Trevethan's orders, he was "unlawfully arrested" and placed in the Restricted Housing Unit ("RHU") in retaliation for filing a grievance. (*Id.* ¶¶ 16, 56). On September 2, 2021, Bohannon appealed the unanswered grievance to Defendant Ransom. (*Id.* ¶ 24). Defendant Ransom declined to process Bohannon's appeal because the original grievance was never received. (*Id.* ¶ 39).

### Return to General Population in August of 2021

On or about August 25, 2021, SCI-Dallas Security Staff released Bohannon from the RHU and returned him to general population. (*Id.* ¶ 19). Security Staff moved Bohannon from O-Block (Custody Level 2 Housing Unit, Honor Block) to C-Block (Custody Level 4 Housing Unit). (*Id.*). Bohannon appears to allege that the transfer to a different housing block was unwarranted because there were no changes to his custody level. (*Id.*).

### August 2021 Inventory Search and Missing Property

Bohannon alleges that Defendant Berlew was assigned to collect his property on August 19, 2021. (*Id.* ¶ 17). Then, Bohannon alleges that on or about August 21, 2021, two unidentified correctional officers removed him from his cell to inventory his property. (*Id.* ¶

3

18).  After the inventory search concluded, Bohannon noticed several of his items were missing.  (*Id.*).  The unidentified correctional officer informed Bohannon that the items would be in the property room.  (*Id.*).

On August 26, 2021, Bohannon "was summoned to SCI Dallas' Property Room" to retrieve his personal property.  (*Id.* ¶ 20).  Bohannon alleges that multiple clothing items were missing, as well as other personal items, magazines, and legal documents.  (*Id.*).  Bohannon inquired with several correctional officers about his items, but a correctional officer informed him "there was nothing that [h]e could do."  (*Id.* ¶ 21).  On August 28, 2021, Bohannon asked another correctional officer about his missing property.  (*Id.* ¶ 22).  Allegedly, this resulted in correctional officers returning some of the lost items.  (*Id.*).  Because several of his items were still missing, Bohannon sent a request slip to Defendant Ransom inquiring about the remaining property.  (*Id.* ¶ 23).  Defendant Ransom responded to the request slip and advised Bohannon that he should contact the RHU, Security, or the property room regarding his missing property.  (Doc. 36-1, p. 35).

Grievance Number 944965

On September 4, 2021, Bohannon filed Grievance Number 944965 alleging SCI-Dallas staff retaliated by placing him in the RHU and moving him to another block upon his return to general population.  (Doc. 36-1 ¶ 25; Doc. 36-2, pp. 6-7).  On September 10, 2021, Defendant Hogan, the Facility Grievance Coordinator, rejected the grievance because each issue needed to be presented in separate grievances.  (Doc. 36-1 ¶ 42; Doc. 36-2, p. 8).

The following day, Bohannon submitted an inmate request and sought an extension of time to file each separate grievance. (Doc. 36-2, p. 9). In response, Defendant Hogan informed Bohannon that he had five working days to resubmit a rejected grievance. (Doc. 36-1 ¶ 43; Doc. 36-2, p. 9). Thereafter, on September 16, 2021, Bohannon filed Grievance Numbers 946023, 946083, and 946257. (Doc. 36-1 ¶ 27). These three grievances are summarized below.

### Grievance Number 946023

On September 16, 2021, Bohannon filed Grievance Number 946023, alleging that his property was taken in retaliation for unspecified actions. (Doc. 36-1 ¶¶ 44-45). That same day, Defendant Hogan rejected Grievance Number 946023 for failing to provide the necessary documentation. (*Id.* ¶ 50). On September 16, 2021, Bohannon appealed his initial grievance denial to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 36-1, pp. 65-66; Doc. 36-1 ¶ 29). On October 8, 2021, Defendant Moore, the Assistant Chief Grievance Officer, rejected the appeal for failing to follow procedures. (Doc. 36-1, pp. 65-66; Doc. 36-1 ¶ 29). Defendant Moore directed Bohannon to resubmit his grievance or appeal to the Facility Manager. (Doc. 36-1, p. 66). Bohannon then appealed the grievance to Defendant Ransom, the Facility Manager. (Doc. 36-1, p. 98; Doc. 36-1 ¶ 35). On October 15, 2021, Defendant Ransom upheld Defendant Hogan's decision not to process the initial grievance. (*Id.*). Bohannon appealed Defendant Ransom's decision to SOIGA on October 28, 2021. (Doc. 36-1 ¶ 38). On final review,

Defendant Moore, on behalf of "D. Varner", upheld the decision to reject the initial grievance. (Doc. 36-2, p. 41).

### Grievance Number 946083

On September 16, 2021, Bohannon filed Grievance Number 946083, alleging he was moved to a less desirable housing level in retaliation for inquiring about an unanswered grievance. (Doc. 36-2, pp. 17-18). Upon initial review, Defendant Hogan required an extension of ten days to fully respond to Bohannon's allegations. (Doc. 36-1 ¶ 34; Doc. 36-2, p. 19). Bohannon alleges that, even with the extension of time, Defendant Hogan failed to respond. (Doc. 36-1 ¶ 37). Therefore, on October 27, 2021, Bohannon filed an appeal to Defendant Ransom. (Id.). On November 16, 2021, Defendant Ransom rejected the appeal of Grievance Number 946083 because Bohannon did not receive a rejection of the initial grievance before filing his appeal. (Id. ¶ 39; Doc. 36-2, p. 27). Bohannon appealed to SOIGA. (Doc. 36-2, p. 65). On January 31, 2022, Defendant Moore upheld the decision to reject his grievance in part. (Id.). Specifically, Defendant Moore found as follows:

> You claim in your grievance that on 8/18/21 you were confined to the RHU. You claim that when you were released on 8/25/21 you were returned to C block instead of O block although you were cleared of all wrongdoing. An investigation was conducted regarding your allegation. The record reflects that you were placed in the RHU in AC status for your own safety and security. The record reflects that due to security and safety concerns, staff felt that you should no longer be housed on O block. This was not done as punishment but for safety. You have failed to provide any evidence that you should have been returned to O block. Therefore, your grievance is denied as well as your requested relief.

(Id.).

Grievance Number 946257

On September 16, 2021, Bohannon filed Grievance Number 946257, alleging that he was improperly placed in the RHU in retaliation for asking about the status of the unanswered grievance.  (Doc. 36-1, pp. 48-49).  On September 20, 2021, Defendant Hogan rejected the grievance because it was not submitted within fifteen working days of the events upon which the claims were based.  (*Id.* at p. 67).  Bohannon appealed the initial response to Defendant Ransom.  (*Id.* at p. 99).  On October 13, 2021, Defendant Ransom upheld Defendant Hogan's decision to dismiss the grievance as untimely.  (*Id.* at p. 100).  Bohannon appealed to SOGIA.  (Doc. 36-1 ¶ 41; Doc. 36-2, p. 42).  Upon review, Defendant Moore upheld the decision to dismiss the grievance as untimely.  (*Id.*).

Based on these allegations, Bohannon alleges that Defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights, and engaged in a conspiracy to violate his constitutional rights.  (Doc. 36-1 ¶¶ 44-56).

## II.    **Legal Standard**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   **Discussion**

### A.   *Claims of Personal Involvement*

Defendants first move to dismiss the amended complaint based on Bohannon's failure to identify how each Defendant was personally involved in the violation of his constitutional rights. (Doc. 50, pp. 16-24).

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (*2002); Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Thus, § 1983 limits liability to persons who violate constitutional rights.

Importantly, individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior*."  *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08.  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

### 1.    Defendants Fagan and Hogan

Bohannon asserts that Defendant Fagan is employed by the DOC as a Grievance

Coordinator at SCI-Dallas and Defendant Hogan is employed by the DOC as a

Superintendent's Assistant/Grievance Coordinator at SCI-Dallas.  (Doc. 36-1 ¶¶ 6, 7).  The

only allegations against these two Defendants pertain to their involvement in the grievance

process and their respective roles as Grievance Coordinators.  Investigating and denying a

grievance appeal that alleges inadequate conditions of confinement is not equivalent to

being deliberately indifferent to a prisoner's complaints.  *See Alexander v. Gennarini*, 144 F.

App'x 924, 925 (3d Cir. 2005) (not precedential) (explaining that prisoner's claims against

certain defendants were "properly dismissed" because the allegations against them "merely

assert their involvement in the post-incident grievance process").  To the extent that

Bohannon attempts to hold Defendants Fagan and Hogan liable based upon their

involvement in the grievance procedure, this claim fails.  It is well-established that the

"failure of a prison official to provide a favorable response to an inmate grievance is not a

federal constitutional violation."  *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa.

1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992).  Defendants Fagan and Hogan are entitled to

dismissal on this ground.

### 2.    Defendant Trevethan

Bohannon asserts that Defendant Trevethan is employed by the DOC as a

Correctional Officer at SCI-Dallas.  (Doc. 36-1 ¶ 4).  Bohannon alleges that he contacted

11

Defendant Trevethan on August 18, 2021, regarding his previously filed unanswered grievance. (*Id.* ¶ 15). Defendant Trevethan allegedly instructed Bohannon to have a correctional officer make a copy of the grievance. (*Id.*). He assured Bohannon that "it would be taken care of." (*Id.*). On or about that same day, Bohannon alleges that, per Defendant Trevethan's orders, he was "unlawfully arrested" and placed in the RHU in retaliation for filing a grievance. (*Id.* ¶¶ 16, 56). These allegations adequately assert that Defendant Trevethan had personal involvement in the alleged wrongdoings. The Court will deny Defendants' motion with respect to their argument that Bohannon failed to allege the personal involvement of Defendant Trevethan.

### 3.    Defendant Moore

Bohannon next asserts that Defendant Moore is the Assistant Grievance Officer of the DOC and that she responded to his grievance appeals. (Doc. 36-1 ¶¶ 8, 41, 43, 37). As stated, the filing of a grievance is not sufficient to show the actual knowledge required for personal involvement. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not

sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006). In accordance with the foregoing, any attempt by Bohannon to establish liability against Defendant Moore based upon her response to a grievance does not support a constitutional claim. *See Alexander*, 144 F. App'x at 925. Defendants' motion will be granted on this ground.

### 4.    Defendant Berlew

Bohannon asserts that Defendant Berlew is the Property Room Officer at SCI-Dallas. (Doc. 36-1 ¶ 5). He alleges that Defendant Berlew "was assigned to collect [his] property" on August 19, 2021, and failed to properly take control of his personal items. (*Id.* ¶¶ 17, 48). Upon review of the amended complaint, the Court finds that Bohannon adequately alleges Defendant Berlew's personal involvement. The Court will deny Defendants' motion with respect to their argument that Bohannon failed to allege the personal involvement of Defendant Berlew.

### 5.    Defendants Ransom and Little

Bohannon asserts that Defendant Ransom is the Superintendent of SCI-Dallas and Defendant Little is the Secretary of the DOC. (Doc. 36-1 ¶¶ 9, 10). Bohannon seeks to impose liability on Defendants Ransom and Little based on their alleged acquiescence in their subordinates' violations. Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. Bohannon fails to meet his burden.

He neglects to go beyond the conclusory allegations contained in his amended complaint and fails to allege the personal direction or actual knowledge in the underlying conduct of which he complains.

Bohannon also alleges Defendant Ransom responded to his grievances and an inmate request slip. For the reasons discussed above, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Rode*, 845 F.2d 1195, 1207 (3d Cir. 1998) (determining that, supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them." ); *Brooks*, 167 F. App'x at 925 (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). Thus, Bohannon's attempt to impose liability against Defendant Ransom based upon his participation in the grievance procedure does not support a constitutional claim. *See Alexander*, 144 F. App'x at 925 (finding that involvement in post-incident grievance process not a basis for liability).

14

For all the reasons set forth above, the claims against Defendants Ransom and Little will be dismissed based on lack of personal involvement.

B.    Eighth Amendment

Bohannon brings an Eighth Amendment claim relative to his placement in the RHU and the corresponding confiscation of his personal items and legal materials, and failure to properly process grievances.  The Eighth Amendment requires prison officials to provide "humane conditions of confinement." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result from the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotations and citations omitted).  "Courts have widely held that conditions in the RHU do not satisfy this standard." *Mowery v. Overmyer*, No. 1:22-cv-00180, 2023 WL 3800016, at *9 (W.D. Pa. June 2, 2023) (citing *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (inmate's 112-day stay in the RHU where he was not denied any of life's necessities did not violate the Eighth Amendment); *Gibson v. Lynch*, 652 F.2d 348 (3d Cir. 1981) (incarceration in solitary confinement for 90 days did not violate the Eighth Amendment); *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (placement in administrative custody for 15 months did not violate the Eighth Amendment)).

The allegations in support of Bohannon's claim are centered around his placement in the RHU, the mishandling of confiscated personal property, and failure to properly process

grievances (Doc. 36-1 ¶¶ 44-49, 55-56), which do not rise to the level of conduct that is so

reprehensible as to be deemed inhumane or that resulted in the deprivation of the minimal

civilized measures of the necessities of life.  Bohannon alleges that Defendant Trevethan

ordered his placement in the RHU on August 18, 2021, and SCI-Dallas Security Staff

cleared Bohannon to return to general population on August 25, 2021.  (Doc. 36-1 ¶¶ 16,

19).  Thus, Bohannon's approximate seven days in the RHU, without more, does not violate

the Eighth Amendment.  Additionally, the mere rejection of a grievance does not

demonstrate that an official acted with knowledge of a substantial risk of harm.  *Alexander*,

144 F. App'x at 925.  Likewise, allegations that Bohannon was deprived of personal and

legal materials do not rise to the level of an Eighth Amendment violation.  *Powell v. Wetzel*,

No. 1:12-cv-01684, 2014 WL 2864686, at *5 (M.D. Pa. June 24, 2014).  Accordingly, the

Court will dismiss Bohannon's Eighth Amendment claim.

### C.    Fourteenth Amendment

#### 1.    Procedural Due Process

Bohannon brings a claim for violation of his procedural due process rights relative to

his placement in the RHU, Defendants' processing of his grievances, and the loss of his

property.  "The Fourteenth Amendment's Due Process Clause protects persons against

deprivations of life, liberty, or property; and those who seek to invoke its procedural

protection must establish that one of these interests is at stake."  *Wilkinson v. Austin*, 545

U.S. 209, 221 (2005).  In analyzing a procedural due process claim, "the first step is to

determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Liberty interests arise from the Constitution or "from an expectation or interest created by state laws." *Williams v. Sec'y, Dep't of Corr.*, 848 F.3d 549, 558-59 (3d Cir.) *cert. denied sub nom. Walker v. Farnan*, 583 U.S. 932, 138 S. Ct. 357, 199 L. Ed. 2d 263 (2017), and *cert. denied sub nom. Williams v. Wetzel*, 583 U.S. 932, 138 S. Ct. 357, 199 L. Ed. 2d 263 (2017) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). In the prison context, a protected liberty interest arises only where a restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 558-59 (citations omitted).

Bohannon's claim regarding his placement in the RHU fails. "Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the type of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Courts have routinely held that periods of disciplinary confinement of up to fifteen months do not implicate due process concerns. *Powell v. McKeown*, No. 1:20-cv-348, 2021 WL 2400773, at *7 (M.D. Pa. June 11, 2021) (citing *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010); *Smith*, 293 F.3d at 653; *Griffin*, 112 F.3d at 708). Here, Bohannon alleges that he was only placed in the RHU for seven days. Because this does not implicate any

protected liberty interest, he cannot show any violation of his right to due process. Accordingly, the Court will dismiss this claim.

Bohannon also claims that Defendants violated his Fourteenth Amendment rights based on the DOC's grievance system policies and procedures and the manner in which they handled his grievances. It is well-settled that prisoners do not have a constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated). Therefore, the Court will dismiss Bohannon's claim regarding the alleged mishandling of grievances.

Bohannon's due process claim arising from confiscation and/or interference with his mail also does not constitute a significant or atypical hardship, and, as such, does not qualify for any procedural protections. *See Caldwell v. Folino*, Civil No. 09-217, 2009 WL 3082524, at *15 (W.D. Pa. June 10, 2009), *report and recommendation adopted*, Civil No. 09-217, 2009 WL 3055298 (W.D. Pa. Sept. 21, 2009) citing *Donovan v. Magnusson*, Civil No. 04-102, 2005 WL 757585, at *2 (D.Me. March 11, 2005) ("Any claims that the opening of his mail out of his presence offended the Fourth or Fourteenth Amendment due process clause must fail, *see Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Hudson v. Palmer*, 468 U.S. 517 (1984); *Barstow v. Kennebec County Jail*, 115 F. Supp.2d 3, 8 (D.Me. 2000)").

Finally, the due process claim arising out of the loss and confiscation of Bohannon's personal property also fails. Meaningful post-deprivation remedies provide sufficient due

process for negligent deprivations of property, *Parratt v. Taylor*, 451 U.S. 527, 530, (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986), and intentional deprivations of property, *Hudson*, 468 U.S. at 533.  The DOC grievance procedure provides an adequate post-deprivation remedy, *see, e.g., Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir. 2000), and the existence of this post-deprivation remedy forecloses a due process claim.  Even if the prison grievance procedure were constitutionally inadequate, Bohannon could take advantage of state tort law which may serve as an adequate post-deprivation remedy.  *See* 42 PA. CONS. STAT. ANN. § 8522(a), (b)(3).

### 2.    Equal Protection

Bohannon's equal protection claim will be dismissed.  The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates.  *See id.*  Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination to state an equal protection claim.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Specifically, he must state facts showing that: "(1) the defendant treated him differently from

others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational

basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d

Cir. 2006). However, prison inmates are not members of a protected class. *See Abdul-*

*Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a

suspect class). Bohannon generally alleges that Defendants engaged in racial

discrimination and ethnic intimidation. (Doc. 36-1 ¶¶ 44-49). However, he fails to allege

how Defendants treated him differently than others similarly situated. Additionally,

Bohannon fails to identify any personal involvement by any named Defendant that would

subject them to liability for any alleged equal protection violation. For these reasons, the

Court will grant Defendants' motion to dismiss the equal protection claim.

      D.    False Imprisonment/Unlawful Confinement Claim

      Bohannon claims false imprisonment/unlawful confinement. (Doc. 36-1 ¶ 56).

Based on his placement in the RHU, Bohannon accuses Defendant Trevethan of false

imprisonment. (*Id.*). The Court understands Bohannon to be raising a state law claim of

false imprisonment.

      To state a claim for false imprisonment under Pennsylvania law, Bohannon must

show that (1) he was detained; and (2) the detention was unlawful. *Kornegey v. City of*

*Phila.*, 299 F. Supp. 3d 675, 682 (E.D. Pa. 2018). There is no apparent authority for an

inmate who is lawfully incarcerated to bring a false imprisonment claim under Pennsylvania

law based on the conditions of his confinement. *Id.* Nevertheless, any such claim "would

require, at the very least, the deprivation of a cognizable liberty interest without due process," *id.*, and Bohannon's allegations do not satisfy that burden for the reasons discussed. Thus, the Court will dismiss Bohannon's false imprisonment/unlawful confinement claim.[2]

### E.    First Amendment

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. To state a retaliation claim, Bohannan must plausibly plead that (1) he engaged in protected activity; (2) officials took an adverse action against the plaintiff; and (3) "a causal link" exists "between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Anderson v. Davilla*, 125 F.3d 148, 161 (3d Cir. 1997).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*,

---

[2]    Liberally construing the amended complaint, Bohannon appears to raise a Fourth Amendment claim for false imprisonment arising out of his placement in the RHU. In order to state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Here, there was no arrest. Accordingly, this Fourth Amendment claim must be dismissed.

203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *Bistrian v. Levi,* 696 F.3d 352, 376 (3d Cir. 2012). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal quotation marks and citation omitted). The retaliatory conduct "need not be great in order to be actionable" but must be "more than *de minimus*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

Bohannon alleges that Defendants retaliated against him for filing an unanswered grievance in June of 2021. (Doc. 36-1 ¶¶ 43-55). As stated *supra*, Bohannon submitted a grievance to Defendant Fagan on June 27, 2021. (Doc. 36-1 ¶ 12). Therein, he alleged that two non-party correctional officers violated rules of conduct by changing the television station, playing loud music, and retaliating against inmates. (Doc. 36-1, p. 32). Bohannon alleges that the grievance was not properly processed and answered in accordance with

DOC policy. (Doc. 36-1 ¶ 13). In July of 2021, Bohannon alleges that he spoke to Defendant Fagan regarding the alleged unanswered grievance, who informed him that his grievances would be addressed. (*Id.* ¶ 14). When he still did not receive a response by August of 2021, Bohannon contacted Defendant Trevethan regarding the unanswered grievance. (*Id.* ¶ 15). Defendant Trevethan allegedly instructed Bohannon to have a correctional officer make a copy of the grievance and assured Bohannon that "it would be taken care of." (*Id.*). Bohannon then alleges that, on that same day, Defendant Trevethan ordered his unlawful arrest and placement in the RHU in retaliation for filing the grievance. (*Id.* ¶ 16). Bohannon maintains that Defendants placed him in the RHU, confiscated his property, and removed him from O-Block in retaliation for filing the grievance.

The allegations suffice to show the elements of a retaliation claim.

According to the amended complaint, Bohannon challenged the actions of two non-party correctional officers in a grievance. The filing of grievances represents protected activity within the scope of the first element of a retaliation claim. *See e.g.*, *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016) (quoting *Mitchell*, 318 F.3d at 530).

With respect to the second element, the Court must consider whether the alleged adverse actions set forth above—placement in the RHU, confiscation of property, and removal from O-Block—are actionable under § 1983. Placing Bohannon in the RHU and subsequently changing his housing unit represent adverse consequences. *See Watson*, 834 F.3d 417, 423 (plaintiff suffered an adverse consequence when defendant charged him

with a Class I misconduct because "Class I misconducts subject inmates to a range of sanctions, including a disadvantageous change in housing assignment, placement in restricted housing or restrictive confinement for up to 90 days, or a detrimental change in program level."); *Mitchell*, 318 F.3d at 530 (several months in disciplinary confinement would deter a reasonably firm prisoner from exercising First Amendment rights).

Next, while cell searches are a routine part of prison life, *Hudson*, 468 U.S. at 526-27, it does not mean that searches that constitute "calculated harassment unrelated to prison needs" are permissible. *Id.* at 530. The Third Circuit has held that a retaliatory search and seizure may be sufficient to satisfy the adverse action prong of a retaliation clam. *See Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017) (citing *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002)). Bohannon is not basing his retaliation claim only upon a cell search. Rather, Bohannon avers that personal property was confiscated and that Defendant Berlew failed to properly take control of his personal items. (Doc. 36-1 ¶¶ 17, 48). This Court has noted that a cell search and resulting confiscation of property may constitute adverse action "if motivated solely by a retaliatory motive." *Hernandez-Tirado v. Lowe*, No. 3:14-cv-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017). The Court finds that the cell search and confiscation of personal property allegations are sufficient to satisfy the adverse action prong of the prima facie retaliation claim.

With respect to the third prong of a retaliation claim, while causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *Watson*, 834 F.3d at 422. Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.*

Here, Bohannon alleges that Defendant Trevethan ordered his placement in the RHU on the very day he inquired about the unanswered grievance. Additionally, Bohannon claims that prison staff searched and confiscated his property and placed him in a less desirable housing unit upon return to general population. At this preliminary juncture in this litigation, these allegations are sufficient to suggest a causal connection between Bohannon's protected activity and the resulting adverse actions. Therefore, Defendants' motion to dismiss the First Amendment retaliation claim will be denied.

F.    *Civil Rights Conspiracy*

Bohannon alleges a civil rights conspiracy. To demonstrate the existence of a conspiracy under § 1983, a plaintiff must allege that that two or more conspirators reached an agreement to deprive him of a constitutional right under color of law. *See Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). The complaint must not plead merely a "conclusory allegation of agreement at some unidentified

point." *Twombly*, 550 U.S. at 557.  A plaintiff must allege "facts that plausibly suggest a

meeting of the minds with specific facts addressing the time the agreement was made, the

period of the conspiracy, the exact parties to the agreement, and the object of the

conspiracy.  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79

(3d Cir. 2010); *see also Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding

conspiracy claims based on plaintiff's subjective suspicions and unsupported speculation

were properly dismissed at screening).  Essentially, Bohannon is alleging that Defendants

conspired to violate a multitude of constitutional rights at various times.  (Doc. 36-1 ¶¶ 50-

55).  The alleged conspiracies identified are conclusory and speculative in nature and lack

the requisite specificity.  Defendants' motion to dismiss this claim will be granted.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview

State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The Court finds that

further amendment would be both futile and inequitable because Bohannon has filed an

amended complaint and has failed to remedy the deficiencies.  *See Jones v. Unknown*

*D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V.     Conclusion

Consistent with the foregoing, Defendants' motion (Doc. 44) to dismiss will be granted in part and denied in part.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: December ___, 2024